Joseph J. Siprut (*pro hac vice* application to be filed)
*jsiprut@siprut.com*
Richard L. Miller II (*pro hac vice* application to be filed)
*rmiller@siprut.com*
Ismael Salam (*pro hac vice* application to be filed)
*isalam@siprut.com*
**SIPRUT PC**
17 N. State Street, Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000; Fax: 312.878.1342

Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Robert Ahdoot, SBN 172098
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Phone: (310) 474-9111; Fax: (310) 474-8585

Attorneys for Plaintiff,
VANESSA MILLER

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>TIME WARNER CABLE INC., a Delaware Corporation,<br><br>Defendant. | Case No. 8:16-cv-00329<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. |

Plaintiff Vanessa Miller ("Plaintiff") brings this Class Action Complaint against Defendant Time Warner Cable Inc. ("TWC"), on behalf of herself and all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## I.   NATURE OF THE ACTION

1. TWC is one of the largest providers of cable and Internet services in the United States. In an effort to market its products and services, TWC made (or directed to be made on its behalf) calls to the wireless telephones of Plaintiff and each of the members of the Class without prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Neither Plaintiff nor the other Class members consented in writing, authorized, desired or permitted TWC to make calls to their wireless telephones.

3. By making such unauthorized calls, TWC caused Plaintiff and each of the Class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited calls, and the monies paid to their wireless carriers for the receipt of such calls.

4. In order to redress these injuries, Plaintiff seeks: (a) an injunction requiring TWC to cease all unsolicited calling activities; (b) an award of statutory damages to Plaintiff and the putative Class members under the TCPA; and (c) costs and reasonable attorneys' fees.

## II.   JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

6. This Court has personal jurisdiction over TWC pursuant to the California Long-Arm Statute, Code of Civil Procedure section 410.10, which

authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. TWC, by conducting business and making mass phone calls to wireless telephones in the State of California, has sufficient contacts in this State to render the exercise of jurisdiction by this Court permissible.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred in this District.

### III.   PARTIES

*Plaintiff*

8. Plaintiff is an individual residing in Fullerton, California.

*Defendant*

9. TWC is a corporation organized in and existing under the laws of the State of Delaware with its principal place of business located at 60 Columbus Circle in New York City, New York.

### IV.   FACTUAL BACKGROUND

*Defendant Uses an ATDS/Predictive Dialer*

10. Companies have employed advanced technologies that make it easier to market their products and services. According to a recent report examining class actions under the TCPA in the Northern District of Illinois:

> ***Autodialers (also known as robocalls) automatically deliver a prerecorded message to a list of telephone numbers, and thus remove the need for human representatives***. These predictive dialers were developed to find better pacing (scheduling of dialing attempts) by collecting and analyzing data on the proportion of call attempts that are answered, durations of time from call initiation to answer, and durations of service. The technology was designed to minimize both the time that

authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. TWC, by conducting business and making mass phone calls to wireless telephones in the State of California, has sufficient contacts in this State to render the exercise of jurisdiction by this Court permissible.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred in this District.

### III.   PARTIES

*Plaintiff*

8. Plaintiff is an individual residing in Fullerton, California.

*Defendant*

9. TWC is a corporation organized in and existing under the laws of the State of Delaware with its principal place of business located at 60 Columbus Circle in New York City, New York.

### IV.   FACTUAL BACKGROUND

*Defendant Uses an ATDS/Predictive Dialer*

10. Companies have employed advanced technologies that make it easier to market their products and services. According to a recent report examining class actions under the TCPA in the Northern District of Illinois:

> ***Autodialers (also known as robocalls) automatically deliver a prerecorded message to a list of telephone numbers, and thus remove the need for human representatives***. These predictive dialers were developed to find better pacing (scheduling of dialing attempts) by collecting and analyzing data on the proportion of call attempts that are answered, durations of time from call initiation to answer, and durations of service. The technology was designed to minimize both the time that

telemarketers must spend waiting between conversations and amount of abandoned calls experienced by consumers.[1]

11. In 2003, the Federal Communications Commission added "predictive dialers" to fall within the meaning of an "automatic telephone dialing system," as defined in the TCPA.[2]

12. According to the FCC, a predictive dialer is:

> an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. Such software programs are set up in order to minimize the amount of downtime for a telemarketer. In some instances, a consumer answers the phone only to hear "dead air" because no telemarketer is free to take the call.
>
> \* \* \*
>
> Predictive dialers initiate phone calls while telemarketers are talking to other consumers and frequently disconnect those calls when a telemarketer is unavailable to take the next call. In attempting to 'predict' the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as 'dead air.' . . . The record also reveals that predictive

---

[1] Institute for Consumer Antitrust Studies, Loyola University Chicago School of Law, THE TELEPHONE CONSUMER PROTECTION ACT OF 1991: ADAPTING CONSUMER PROTECTION TO CHANGING TECHNOLOGY 7 (Fall 2013) (emphasis added). The report "was made possible through a cy pres distribution from a class action involving the TCPA in the Northern District of Illinois under the supervision of Senior Judge William Hart and Magistrate Judge Morton Denlow." *Id.* at 2.

[2] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 ¶ 133 (July 3, 2003).

CLASS ACTION COMPLAINT
-3-                                              CASE NO. 8:16-CV-00329

dialers are responsible for the vast majority of abandoned telemarketing calls – both hang-ups and 'dead air' calls.[3]

***TWC's Calls to Plaintiff and the Class***

13. At all relevant times, Plaintiff was the subscriber of the wireless telephone number ending in 5113.

14. Plaintiff had been a former customer of TWC up to around May 2015, when Plaintiff moved residences within Fullerton, California.

15. Prior to her move, Plaintiff contacted TWC in order to inform TWC that she would be moving and to cancel service with TWC.

16. Plaintiff made clear that she was not interested in using TWC's services.

17. Starting in June 2015, Plaintiff began receiving calls from TWC on her wireless telephone.

18. TWC called Plaintiff's wireless telephone in the morning, afternoon, and night in order to market its Internet and phone services.

19. Plaintiff received approximately one to three calls per day over the course of a month.

20. Upon answering the calls and saying "hello," there was a long pause before a live person joined the call on the other end of the line.

21. The caller stated that they were calling to market TWC's services.

22. TWC called Plaintiff not regarding Plaintiff's previous account, but rather in an attempt to solicit Plaintiff to engage in new services with TWC.

---

[3] *Id.* ¶¶ 8, 146, 147; *see In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 23 FCC Rcd. 559 ¶ 12 (Jan. 4, 2008) (affirming "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers" and rejecting position that "a predictive dialer meets the definition of [an ATDS] only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists").

23. On several occasions, when Plaintiff answered the calls, TWC's representatives were not available, resulting in a hang-up or dead-air call.

24. Other individuals have also reported receiving unwanted calls from TWC:

- During the past year I have received repeated calls from telemarketers working for Time Warner trying to sell me added cable services that I either did not want, or had already cancelled in disgust. In all cases I spoke to a supervisors and told them I did not want any further calls, and in all cases the calls continued.[4]

- Time Warner Cable Inc must pay [King] $229,500 for placing 153 automated calls meant for someone else to her cellphone in less than a year, even after she told it to stop.[5]

- Time Warner Cable has been calling over and over during the course of the past few days, trying to upsell me to one of their "digital cable" packages.[6]

25. On information and belief, TWC has made and continues to make phone calls to Plaintiff's and the Class members' wireless phones without prior express consent as part of its campaign.

26. TWC made or had made on its behalf, the same or substantially the same calls *en masse* to a list of thousands of wireless telephone numbers or randomly generated phone numbers.

---

[4] Time Warner Inflicts Incessant Telemarketing On Its Customers, They Cheated Us (July 2008), http://they.cheated.us/out-of-customer-service/time-warner-cable/time-warner-telemarketing.html (last visited Jan. 25, 2016).

[5] Jonathan Stempel, Time Warner Cable Owes $229,500 To Woman It Would Not Stop Calling Reuters (July 8, 2015 12:28PM EDT), http://www.reuters.com/article/us-twc-robocalls-idUSKCN0PH2H920150708.

[6] Phil Villarreal, Time Warner Cable Keeps Bugging Me, Brags It's Immune To Do Not Call Registry, Consumerist (Dec. 8, 2010), http://consumerist.com/2010/12/08/time-warner-cable-keeps-bugging-me-brags-its-immune-to-do-not-call-registry.

27. On information and belief, TWC made these calls to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

28. Plaintiff and the Class members did not provide prior express written consent for TWC to call their wireless phones.

## V. CLASS ALLEGATIONS

29. Plaintiff brings this action, as set forth below, on behalf of herself and seeks to represent a class consisting of all others who are similarly situated. Pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a class defined as follows:

> All individuals in the United States to whose wireless telephones Defendant Time Warner Cable Inc. made non-emergency calls through the use of an automatic telephone dialing system at any time within the four years prior to the filing of the instant Complaint (the "Class").

Excluded from the Class are TWC and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

30. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

31. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who

have been damaged by TWC's wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from TWC's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

32. **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.    Whether the equipment TWC (or someone on TWC's behalf) used to make the calls in question was an automatic telephone dialing system as contemplated by the TCPA;

    b.    Whether TWC's calls constitute telemarketing or advertising within the meaning of the TCPA;

    c.    Whether TWC's conduct constitutes a violation of the TCPA;

    d.    Whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

    e.    Whether Plaintiff and the Class are entitled to treble damages based on the willfulness of TWC's conduct; and

    f.    Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief.

33. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because, among other things,

all Class members were comparably injured through the uniform prohibited conduct described above.

34. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

35. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** TWC has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class as a whole.

36. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against TWC, so it would be impracticable for Class members to individually seek redress for TWC's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer

-8-
CASE NO. 8:16-CV-00329

management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIM ALLEGED

**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.**

**(On behalf of the Class)**

37. TWC and/or its agents made phone calls to the wireless telephone numbers of Plaintiff and the other Class members *en masse* without their prior express written consent.

38. TWC made the calls, or had them made on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

39. TWC utilized equipment that made the calls to Plaintiff's and other Class members' wireless telephones simultaneously and without human intervention.

40. By making the calls to Plaintiff and the Class, TWC has violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of TWC's unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the calls on their wireless phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

41. Should the Court determine that TWC's conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## VII. JURY DEMAND

42. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff Vanessa Miller, individually and on behalf of the Class, requests that the Court enter an Order as follows:

A. Certifying the Class as defined above, appointing Plaintiff Vanessa Miller as the representative of the Class, and appointing her counsel as Class Counsel;

B. Finding that TWC violated the TCPA;

C. Awarding of actual or statutory damages;

D. Requiring TWC to cease all wireless phone call activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

E. Awarding of reasonable attorneys' fees and costs; and

F. Awarding such other and further relief that the Court deems reasonable and just.

Dated: February 24, 2016

Respectfully submitted,

By: /s/ Tina Wolfson
Tina Wolfson
twolfson@ahdootwolfson.com
Robert Ahdoot
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON PC**
1016 Palm Avenue
West Hollywood, California 90069
Phone: (310) 474-9111
Fax: (310) 474-8585

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joseph J. Siprut*
*jsiprut@siprut.com*
Richard L. Miller II*
*rmiller@siprut.com*
Ismael T. Salam*
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

* *Pro hac vice* application to be filed

***Counsel for Plaintiff Vanessa Miller and the Proposed Class***