LATHAM & WATKINS LLP
    Alexandra A. Roje (Bar No. 210566)
*alex.roje@lw.com*
355 South Grand Avenue
Los Angeles, California 90071
(213) 485-1234 / (213) 891-8763 Fax

LATHAM & WATKINS LLP
    Peter L. Winik (*pro hac vice*)
    Matthew A. Brill (*pro hac vice*)
    Andrew D. Prins (*pro hac vice*)
*peter.winik@lw.com*
*matthew.brill@lw.com*
*andrew.prins@lw.com*
555 Eleventh Street, NW, Suite #1000
Washington, DC 20004
(202) 637-2200 / (212) 637-2201 Fax

Attorneys for Defendant
TIME WARNER CABLE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| VANESSA MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIME WARNER CABLE INC.<br><br>Defendant. | CASE NO. 8:16-cv-00329-CAS(ASx)<br><br>**DEFENDANT TIME WARNER CABLE INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS, OR IN THE ALTERNATIVE STAY, PLAINTIFF'S CLAIMS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: July 25, 2016<br>Time:          10:00 a.m.<br>Judge:        Hon. Christina A. Snyder<br>Courtroom:   5 - 2nd Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.      THIS COURT SHOULD COMPEL PLAINTIFF TO
SUBMIT HER DAMAGES CLAIM UNDER THE
TCPA TO ARBITRATION .................................................................. 2

     A.      The Parties Clearly And Unmistakably Agreed That
The Arbitrator Will Decide Questions About The
Scope Of The Arbitration Clause ........................................... 2

     B.      In Any Event, Plaintiff's TCPA Claim For Damages
Falls Within The Broad Scope Of The Arbitration
Clause .................................................................................... 7

II.      PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF
IS NOT JUSTICIABLE ..................................................................... 12

CONCLUSION ................................................................................................ 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

i

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alford v. Dean Witter Reynolds, Inc.*,
   975 F.2d 1161 (5th Cir. 1992) .......................................................................... 15

*Alvarado v. Pac. Motor Trucking Co.*,
   No. EDCV 14-0504-DOC, 2014 WL 3888184 (C.D. Cal. Aug. 7,
   2014) ...................................................................................................................... 9

*Bailey v. Wells Fargo Bank N.A., Inc.*,
   No. 1:14-CV-0989-CC, 2014 U.S. Dist. LEXIS 185408 (N.D. Ga.
   Aug. 26, 2014) ...................................................................................................... 10

*Baird v. Sabre Inc.*,
   995 F. Supp. 2d 1100 (C.D. Cal. 2014) ............................................................. 9

*Baker v. Osborne Development Corp.*,
   159 Cal. App. 4th 884 (Cal. App. 4th Dist. 2008) ........................................... 5

*Board of School Comm'rs v. Jacobs*,
   420 U.S. 128 (1975) ............................................................................................ 14

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ...................................................................... 3, 4

*Brinkley v. Monterey Financial Services, Inc.*,
   242 Cal. App. 4th 314 (Cal. App. 4th Dist. 2015) ........................................... 3

*Campbell v. Verizon Wireless LLC*,
   No. CIV.A. 14-0517-WS-N, 2015 WL 416484 (S.D. Ala. Jan. 29,
   2015) ...................................................................................................................... 10

*Damato v. Time Warner Cable, Inc.*,
   No. 13-CV-994 ARR, 2013 WL 3968765 (E.D.N.Y. July 31, 2013) ............. 11

*Doe v. Samuel Merritt Univ.*,
   921 F. Supp. 2d 958 (N.D. Cal. 2013) ............................................................. 14

*Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*,
   2010 WL 475361 (N.D. Cal. Feb. 4, 2010) ...................................................... 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

ii

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

*Gubala v. Time Warner Cable Inc.*
No. 15-CV-1078-PP, 2016 WL 3390415 (E.D. Wis. June 17, 2016) ............. 15

*Haddix v. Gen. Mills, Inc.*,
No. 2:15-CV-02625-MCE-AC, 2016 WL 2901589 (E.D. Cal. May
17, 2016) ............................................................................................................ 12

*Hill v. Anheuser-Busch InBev Worldwide, Inc.,*
No. 14-cv-6289-PSG-VBKX, 2014 WL 10100283 (C.D. Cal. Nov.
26, 2014) ............................................................................................................. 6

*Hoai Dang v. Samsung Elecs. Co.*,
14–CV–00530–LHK, 2015 WL 4735520 (N.D. Cal. Aug 10, 2015) ............. 15

*Holcombe v. DIRECTV, LLC*,
No. 4:15-CV-0154-LMM, 2016 WL 526244 (N.D. Ga. Feb. 9,
2016) ................................................................................................................. 10

*Interdigital Tech. Corp. v. Pegatron Corp.*,
No. 15-CV-02584-LHK, 2016 WL 234433 (N.D. Cal. Jan. 20,
2016) ................................................................................................................... 6

*Kuahulu v. Employers Ins. of Wausau*,
557 F.2d 1334 (9th Cir. 1977) ......................................................................... 14

*Martinez v. Carnival Corp.*,
744 F.3d 1240 (11th Cir. 2014) ....................................................................... 10

*Meyer v. Portfolio Recovery Associates, LLC*,
No. 11CV1008 AJB RBB, 2011 WL 11712610 (S.D. Cal. Sept. 14,
2011) ................................................................................................................. 13

*Mohamed v. Uber Techs., Inc.*,
109 F. Supp. 3d 1185 (N.D. Cal. 2015) ............................................................ 5

*Mullin v. Gen. Motors LLC*,
No. CV-15-7668-DMG-RAOX, 2016 WL 94235 (C.D. Cal. Jan. 7,
2016) ................................................................................................................... 2

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ..................................................................................... 1, 12

*Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*,
989 F.2d 1077 (9th Cir. 1993) ........................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

iii

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

*Pinela v. Neiman Marcus Grp, Inc.*,
238 Cal. App. 4th 227 (Cal. App. 4th Dist. 2015) ............................................5

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) .........................................................................................5

*Savage v. Glendale Union High Sch. Dist. No. 205*,
343 F.3d 1036 (9th Cir. 2003)........................................................................12

*Sena v. Uber Techs. Inc.*,
No. CV-15-02418, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016).........................5

*Shea v. BBVA Compass Bancshares, Inc.*,
No. 1:12-CV-23324, 2013 WL 869526 (S.D. Fla. Mar. 7, 2013)..............10, 11

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*,
251 F.3d 814 (9th Cir. 2001) ....................................................................13, 14

*Slayman*,
765 F.3d at 1047 ......................................................................................13, 14

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 n.6 (2016) ............................................................................14

*St. Clair v. Chico*,
880 F.2d 199 (9th Cir. 1989) .........................................................................12

*Stevens-Bratton v. TruGreen, Inc.*,
No. 2:15-CV-2472-STA-TMP, 2016 WL 155087 (W.D. Tenn. Jan.
12, 2016)........................................................................................................10

*Varon v. Uber Techs., Inc.*,
No. CV MJG-15-3650, 2016 WL 1752835 (D. Md. May 3, 2016)...................5

*Winter v. NRDC*,
555 U.S. 7 (2008) ..........................................................................................14

*Zenelaj v. Handybook Inc.*,
82 F. Supp. 3d 968 (N.D. Cal. 2015)................................................................3

## STATUTES

9 U.S.C. § 2...............................................................................................3, 6

47 U.S.C. § 227(b)(1)(A)(iii)........................................................................9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

iv

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

1

47 U.S.C. § 227(b)(3) ............................................................................................. 15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

v

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

# INTRODUCTION

Plaintiff does not dispute that she is bound, as a general matter, by TWC's Subscriber Agreement and the Arbitration Clause therein.  Nor does she dispute that she is bound by the Subscriber Agreement's waiver of all class claims.  *See* Motion, ECF No. 40, at 2, 13; Subscriber Agreement, Exhibit A to Declaration of Christine Dzujna (ECF No. 41), § 15(b).  The only disputed question regarding arbitration is whether Plaintiff's claim for damages under the TCPA falls within the scope of the Arbitration Clause.

The Subscriber Agreement clearly and unmistakably provides that an arbitrator must resolve any questions regarding the scope of the Arbitration Clause.  Plaintiff's attempts to create ambiguity regarding that delegation by pointing to allegedly conflicting contractual provisions all fail, because the provisions she relies on either are irrelevant to the analysis or are entirely consistent with the delegation to the arbitrator.  Moreover, even if this Court reaches the question of the scope of the Arbitration Clause, its plain language unambiguously encompasses Plaintiff's TCPA claim for damages.  Plaintiff's attempt to introduce two "implicit" limitations into the clause cannot be squared with the clause's actual language.  Accordingly, Plaintiff's claim for damages must be arbitrated and should be dismissed here.

Plaintiff's claim for injunctive relief fares no better.  It is her burden to establish her standing to pursue injunctive relief by showing that she faces "a real and immediate threat of repeated injury."  *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).  Although TWC challenged her standing with a declaration establishing that no such future injury was possible—as TWC stopped calling Plaintiff over a year ago and has added her to its do-not-call list—Plaintiff did not even try to rebut that showing.  Because she has failed to meet her burden to establish subject matter

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

1

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

jurisdiction on the injunctive claim, it should be dismissed as well.[1]

## ARGUMENT

Plaintiff's claim for damages under the TCPA is subject to a mandatory arbitration clause, and Plaintiff lacks standing to pursue her claim for injunctive relief. This action should therefore be dismissed in its entirety.

## I.   THIS COURT SHOULD COMPEL PLAINTIFF TO SUBMIT HER DAMAGES CLAIM UNDER THE TCPA TO ARBITRATION

Plaintiff does not dispute that she is bound to arbitrate disputes that fall within the scope of the Subscriber Agreement's Arbitration Clause; the only question is whether Plaintiff's TCPA claim for damages is such a dispute. As set forth in detail below, the parties have clearly and unmistakably delegated the authority to make that determination to the arbitrator. In any case, the scope of the Arbitration Clause does unambiguously cover Plaintiff's claim.

### A.   The Parties Clearly And Unmistakably Agreed That The Arbitrator Will Decide Questions About The Scope Of The Arbitration Clause

Plaintiff's argument that this Court should decide whether her claim falls within the scope of the Arbitration Clause lacks merit. Because the Subscriber Agreement concerns a commercial relationship between parties that are citizens of different states, it is plainly governed by the Federal Arbitration Act and the

---

[1] Plaintiff summarily argues that this Court should not rule on this motion until the Judicial Panel on Multidistrict Litigation decides a pending motion to transfer and consolidate this and other cases, and she notes that she intends to file a motion to stay requesting that relief. TWC will respond to that motion in due course once it is filed. For now, it suffices to say that this Court has an obligation to decide these threshold jurisdictional issues before making a discretionary decision regarding a stay. *See Mullin v. Gen. Motors LLC*, No. CV-15-7668-DMG-RAOx, 2016 WL 94235, at *2 (C.D. Cal. Jan. 7, 2016) ("The Court must first address the jurisdictional issue before deciding GM's Motion to Stay [pending decision on MDL transfer]." (collecting cases)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

2

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

federal substantive law of arbitrability applies.  9 U.S.C. § 2; *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-30 (9th Cir. 2015).  Under the federal law of arbitrability, a delegation provision is enforced if it "clearly and unmistakably" delegates responsibility to the arbitrator to determine arbitrability.  *See id.*  The Arbitration Clause easily meets that standard.

The Arbitration Clause provides that arbitration will be conducted under the Commercial Arbitration Rules of the American Arbitration Association (AAA), which expressly assign questions of the Agreement's scope to the arbitrator.  *See* Subscriber Agreement § 15(a)-(b); AAA Commercial Rules R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including  any objections with respect to the … scope … of the arbitration agreement or to the arbitrability of any claim or counterclaim.").  Under well-established federal law, "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  *Opus Bank*, 796 F.3d  at 1130.  Although Plaintiff argues (at 6-7) that this rule applies only in a commercial setting involving sophisticated parties, the weight of authority is otherwise.  Courts routinely apply the rule even when non-sophisticated parties are at issue.  *See Zenelaj v. Handybook Inc*., 82 F. Supp. 3d 968, 973-74 (N.D. Cal. 2015) (collecting cases); *Brinkley v. Monterey Financial Services, Inc*., 196 Cal. Rptr. 3d 1, 34 (Ct. App. 4th Dist. 2015) (consumer class action).  And while the Ninth Circuit has not yet expressly addressed this question, in *Opus Bank* it strongly suggested that it would follow the general rule when presented with an appropriate case.  *See Opus Bank*, 796 F.3d at 1130 ("Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent.");  *id.* at 1130-31 ("Indeed,  the  vast  majority  of  the  circuits  that  hold  that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts.").

TWC need not rely solely on the incorporation of AAA rules, however, because the arbitration clause also contains a provision that expressly provides that "claims relating to whether arbitration is appropriate … will be decided by an arbitrator, not a court." Subscriber Agreement § 15(b). Plaintiff understandably does not even argue that this provision is itself unclear. Rather, Plaintiff argues (at 6) that the delegation to the arbitrator recognized in this provision and through incorporation of the AAA rules is "undermined" by other conflicting provisions of the Subscriber Agreement that suggest a "*court*, as opposed to an arbitrator, has the authority to decide whether a provision of the Subscriber Agreement is enforceable." Not so.

Plaintiff first points (at 6) to the general severability clause in Section 20(b) of the Subscriber Agreement, which states: "If a court or similar body determines that a provision of the Customer Agreement is invalid or unenforceable the rest of the agreement should stand." Relying on a string cite of California state court cases, Plaintiff argues that the presence of such a severability clause recognizing the power of a court to declare a provision invalid or unenforceable creates ambiguity obviating any delegation of such authority to an arbitrator. This argument fails for multiple reasons.

As an initial matter, under the *federal* law that governs this analysis,[2] the parties' agreement to arbitrate and delegate arbitrability to the arbitrator is

---

[2] Plaintiff incorrectly suggests (at 7 n.1) that California law applies to these threshold issues of arbitration. *Opus Bank*, 796 F.3d at 1129-30 ("[F]ederal law governs the arbitrability question by default because the Agreement is covered by the FAA, and the parties have not clearly and unmistakably designated that nonfederal arbitrability law applies." (citation omitted)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

4

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

"severable from the remainder of the contract" in which it is embedded and is treated as "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010). The severability clause Plaintiff points to is not contained in the arbitration section of the Subscriber Agreement and does not reference arbitration; it is a general provision of the contract appearing pages later. It is therefore improper even to consider this language to create ambiguity in the severable arbitration agreement. *See Sena v. Uber Techs. Inc*., No. CV-15-02418-PHX-DLR, 2016 WL 1376445, at *4 (D. Ariz. Apr. 7, 2016) (holding that the contract "and the embedded agreement to submit questions of arbitrability to the arbitrator must … be treated as separate contracts. … The Court is not convinced that it may look beyond the four corners of the Arbitration Provision to find ambiguity …."); *Varon v. Uber Techs., Inc*., No. CV MJG-15-3650, 2016 WL 1752835, at *6 (D. Md. May 3, 2016) ("The Arbitration Provision, limited to its 'four corners,' provides clear and unmistakable delegation of arbitrability to the arbitrator.").[3]

  In any event, this issue ultimately is irrelevant because there is no potential

---

[3] Many of the cases cited by Plaintiff are consistent with this principle because—unlike here—they involve *arbitration-specific* severability provisions. *See*, *e.g.*, *Baker v. Osborne Development Corp*., 71 Cal. Rptr. 3d 854, 859-61 (Ct. App. 4th Dist. 2008) (finding that delegation of arbitrability was contradicted by severability term in the "**same section**" as the arbitration clause). To the extent a few of the California cases look outside the arbitration agreement to other general provisions of the contract, those cases are inconsistent with the federal law of arbitrability. *See, e.g., Pinela v. Neiman Marcus Grp, Inc.*, 190 Cal. Rptr. 3d 159, 170-71 (Ct. App. 4th Dist. 2015) (purporting to apply California law). Plaintiff's reliance on *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015), is misplaced for the same reason: the court there erred by failing to follow the federal law requirement of considering the embedded arbitration agreement and delegation as standalone agreements. *Sena*, 2016 WL 1376445, at *3-4 (finding *Mohamed* unpersuasive and concluding that its "approach is in tension with Supreme Court and Ninth Circuit authority regarding the severability of arbitration provisions").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

5

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

inconsistency between the general severability clause and the arbitration agreement in this case.  The severability clause addresses what happens if a court "or similar body" finds part of the agreement "invalid or unenforceable."   Subscriber Agreement § 20(b).[4]  Here it is ***undisputed*** that both the Subscriber Agreement and the Arbitration Clause are "[]valid and []enforceable."  Plaintiff does not challenge the *validity* of the Arbitration Clause—she does not, for example, say the clause is unconscionable or was procured by fraud or duress.  *See* 9 U.S.C. § 2.  The sole issue is the *scope* of the Arbitration Clause, not its validity, and the severability provision in Section 20(b) says nothing even arguably touching upon that, whereas the delegation provision specifically says that the arbitrator—and *not a court*—is to determine whether arbitration is "appropriate."   Subscriber Agreement § 15(b). The severability provision is simply not implicated here.  *See Hill v. Anheuser-Busch InBev Worldwide, Inc.,* No. 14-cv-6289-PSG-VBKX, 2014 WL 10100283, at *4 (C.D. Cal. Nov. 26, 2014) ("The issues raised by the parties here do not fall into the contracted domain of the courts because ***they do not concern the validity or enforceability of particular provisions*** in the [agreement]. Instead, the parties' issues pertain to the applicability of the [agreement] to Plaintiffs as certain types of employees … [and] to Plaintiffs' policy-oriented claims .... The Article Thirteen Provision clearly and unmistakably indicates an agreement to delegate ***these issues*** to an arbitrator." (emphases added)); *Interdigital Tech. Corp. v. Pegatron Corp.*, No. 15-CV-02584-LHK, 2016 WL 234433, at *5 (N.D. Cal. Jan. 20, 2016) ("The fact that the parties consented to the exclusive jurisdiction of the courts of the Northern District of California … does not alter the Court's conclusion that the parties intended to delegate arbitrability to an arbitrator. … The [agreement's]

---

[4] The use of the term "similar body" shows that the parties intended to have Section 20(b) apply regardless of whether a court (in an injunction case) or an arbitrator (in a case for damages) rules that a portion of the Agreement is unenforceable, and is entirely consistent with an arbitrator ruling on arbitrability.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

6

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

specific carve-outs do not relate to arbitrability, and the [agreement] incorporated all of the AAA rules regarding arbitrability.").

The next provision Plaintiff points to (at 6) as creating "uncertainty" in the delegation to the arbitrator is Section 15(g) of the Subscriber Agreement.  That provision states that "[a]ny Dispute ***properly brought*** in a court of law in connection with our Customer Agreements … will be heard and decided by a judge, not a jury" (emphasis added).  But this is just a jury waiver provision for suits that are *outside* the scope of the Arbitration Clause; hence the use of the phrase "properly brought."  The Subscriber Agreement provides for the limited circumstances in which a suit is "***properly*** brought in a court of law": if the plaintiff elects to file suit in "local 'small claims' court" (§ 15(a))[5], or if the plaintiff effectively opts out of the Arbitration Clause (§ 15(e)), or if the plaintiff brings solely claims for injunctive relief (§ 15(b)).  Nothing about the provision suggests that a court, rather than an arbitrator, is to determine what falls within the scope of the Arbitration Clause.  Nor does this provision apply here, as Plaintiff's damages claim was not properly brought in a court of law.

For these reasons, the parties' delegation to the arbitrator of the power to decide the scope of the Arbitration Clause should be respected.

## B.   In Any Event, Plaintiff's TCPA Claim For Damages Falls Within The Broad Scope Of The Arbitration Clause

Although this Court should not reach the issue, Plaintiff's TCPA claim for damages does unambiguously fall within the scope of the Arbitration Clause. When determining the reach of an arbitration provision, this Court must apply a "strong presumption in favor of arbitrability," which is at its height when, as here, "the arbitration agreement contains broad language." *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir. 1993).  The

---

[5] Interestingly, there are jurisdictions that otherwise allow for juries in small claims courts (South Carolina is one).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

7

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

parties both agree (Opp. at 9) that they are bound to arbitrate any "Dispute," as that term is defined in the Subscriber Agreement:

> [A]ny dispute, claim, or controversy between you and TWC regarding any aspect of your relationship with us **or** any conduct or failure to act on our part, including claims based on breach of contract, tort (for example, a negligence or product liability claim), violation of law or any claims based on any other theory, and including those based on events that occurred prior to the date of this Agreement.

Subscriber Agreement §§15(a), 17(f) (emphasis added).  And Plaintiff does not actually contend that her TCPA claim falls outside of the plain language of the Subscriber Agreement's definition of a Dispute.  Instead, she argues (at 2, 9-10) that the plain language is "implicitly limited" to (**1**) "dispute[s] [that] concern[] the parties 'relationship'"; and (**2**) "disputes or claims that accrue while the Subscriber Agreement is in effect."  But neither of those implicit limitations is consistent with the plain language of the contract.

*First*, the definition of a Dispute plainly is not limited to disputes concerning a particular "relationship."  There are two categories of disputes covered by the agreement: those "regarding" (1) "any aspect of [Plaintiff's] relationship with [TWC] **or**" (2) "any conduct or failure to act on [TWC's] part."  Subscriber Agreement § 17(f).  The use of the disjunctive "**or**" unambiguously shows that the parties did not intend to limit the Arbitration Clause to disputes about a particular "relationship."  Indeed, Plaintiff's "implicit" relationship limitation would render the definition of a "Dispute" nonsensical.  As Plaintiff points out (at 10), the definition of "Dispute" expressly includes controversies "based on events that occurred *prior* to the date of this Agreement."  *Id.*  (emphasis added).  By definition, a controversy cannot "concern[] the parties' 'relationship'"—as Plaintiff contends is required (at 9)—when it arose from "events that occurred prior to the date" that relationship was even formed, confirming that the Arbitration Clause

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
WASHINGTON, D.C.

8

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

1    contains no extra-textual relationship limitation.

2    But even assuming that only claims "concern[ing] the parties' 'relationship'"

3    are subject to the Arbitration Clause, the subject calls *do* relate to Plaintiff's

4    relationship with TWC. Notably, on this "factual" motion to compel arbitration

5    and dismiss under Fed. R. Civ. P. 12(b)(1), "[t]he plaintiff must respond to the

6    motion by presenting **evidence** to support the court's jurisdiction." *Alvarado v.*

7    *Pac. Motor Trucking Co.*, No. EDCV 14-0504-DOC, 2014 WL 3888184, at *3

8    (C.D. Cal. Aug. 7, 2014) (emphasis added). The unrebutted evidence before the

9    Court is that the calls at issue were made pursuant to TWC's customer retention

10   program, for which only TWC's active and recently inactive customers are

11   eligible, and such calls concerned the subject of Plaintiff's *continuing her*

12   *relationship* with TWC. Declaration of Clifton Green, ECF No. 42, ¶ 9. Plaintiff

13   has not submitted a declaration or any other record evidence to support her claim

14   that the calls were not related to her relationship with TWC.[6]

15   ***Second***, the definition of a Dispute plainly is not temporally limited to

16   claims that accrue prior to service disconnection. Plaintiff claims (at 10) that

17   "TWC understood how to expand the temporal limits of 'Dispute' but did so only

18

---

19   [6] The reality is that Plaintiff's *relationship* with TWC will be directly at issue in

20   resolving the merits of the case. The TCPA only prohibits certain calls placed

21   without the recipient's consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii). As part of her

21   relationship with TWC, Plaintiff voluntarily furnished her phone number to TWC,

22   which numerous courts have held constitutes valid consent to be contacted. *See,*

23   *e.g., Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1107 (C.D. Cal. 2014). And the

24   Subscriber Agreement also expressly grants consent for TWC to contact those who

24   have agreed to it. *See* Subscriber Agreement §12. Thus, if, when, and how

25   Plaintiff revoked the consent given as part of her customer relationship is a major

26   part of the case. *See* Answer at 18 (affirmative defense). This reinforces that this

26   dispute relates to an "aspect of [Plaintiff's] relationship" with TWC. *See*

27   Subscriber Agreement § 17(f); *see generally Stevens-Bratton v. TruGreen, Inc.*,

27   No. 2:15-CV-2472-STA-TMP, 2016 WL 155087, at *6 (W.D. Tenn. Jan. 12,

28   2016).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

9

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

1   to capture claims that accrue 'prior' to the Agreement—not after."  But no such

2   additional text was necessary.  As demonstrated by the numerous cases cited in

3   TWC's opening brief (at 9-10 n.5) that Plaintiff has chosen not to address, the

4   default rule is that an arbitration clause survives and continues to apply to injuries

5   that accrue after termination of the surrounding contract, until the arbitration

6   provision *itself* is extinguished.  *See, e.g.*, *Martinez v. Carnival Corp*., 744 F.3d

7   1240, 1245 (11th Cir. 2014); *TruGreen*, 2016 WL 155087, at *6.  Moreover, any

8   possible doubt that the Arbitration Clause applies to claims that accrued after

9   service disconnection is resolved by the survival provision, which provides that

10  "[t]he terms of this Agreement relating to … resolution of Disputes (§ 15) … will

11  survive (in other words, continue to apply to you even after) the termination of this

12  Agreement."  Subscriber Agreement § 18(a).  In case after case, courts have found

13  that such an express survival term establishes that an arbitration clause applies to

14  post-termination injuries that fall within the clause's plain scope.  *See, e.g.,*

15  *Campbell v. Verizon Wireless LLC*, No. CIV.A. 14-0517-WS-N, 2015 WL 416484,

16  at *4-6 & n.12 (S.D. Ala. Jan. 29, 2015); *Shea v. BBVA Compass Bancshares, Inc*.,

17  No. 1:12-CV-23324-KMM, 2013 WL 869526, at *5 (S.D. Fla. Mar. 7, 2013);

18  *Bailey v. Wells Fargo Bank N.A., Inc*., No. 1:14-CV-0989-CC, 2014 U.S. Dist.

19  LEXIS 185408, at *10-12 (N.D. Ga. Aug. 26, 2014) (report and recommendation

20  adopted, 2014 U.S. Dist. LEXIS 185407 (N.D. Ga., Oct. 2, 2014)).

21       The *Holcombe* case upon which Plaintiff relies is not to the contrary.  That

22  case concerned a narrow arbitration clause that applied only to "legal or equitable

23  claim[s] relating to this Agreement, any addendum, or [plaintiff's] Service."

24  *Holcombe v. DIRECTV, LLC*, No. 4:15-CV-0154-LMM, 2016 WL 526244, at *3

25  (N.D. Ga. Feb. 9, 2016).  The court expressly noted that "there [wa]s *no*

26  *contention* that the arbitration provision … *survives* the termination of the

27  DIRECTV account."  2016 WL 526244, at *5 (emphases added).  The court held

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
WASHINGTON, D.C.

10

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

that calls made **two months** after plaintiff disconnected service, marketing a "new account," did not relate to his terminated "Service." *Id.* at *3, *5. Unlike the situation in *Holcombe*, the Arbitration Clause here *does* expressly survive termination. Subscriber Agreement § 18(a). Indeed, the *Holcombe* court felt compelled to distinguish the *Shea* case cited above, where the court found that calls postdating closure of a customer's account **were arbitrable** based on similar "express language providing '[t]his arbitration provision shall survive termination of this Agreement and the closing of your Account.'" 2016 WL 526244, at *3 (quoting *Shea*, 2013 WL 869526, at *5). And here the Arbitration Clause is not limited to any particular "Agreement" or "Service", but is instead much broader— applying to any "claim" involving TWC's "conduct" or a "violation of law." Subscriber Agreement § 17(f).

Plaintiff claims (at 12) that if the Arbitration Clause is not read to contain an implicit temporal limitation, it would "extend to virtually every claim imaginable," raising the entirely speculative idea that TWC could attempt to enforce the Arbitration Clause for "a negligence claim arising from an auto accident between Plaintiff and a TWC delivery driver ten years from now." But contract law itself already contains limiting principles to protect against isolated cases of overreach, such as the doctrine of unconscionability (which Plaintiff *does not assert* here). Indeed, Plaintiff is not the first to raise the very same car accident hypothetical. *See Damato v. Time Warner Cable, Inc*., No. 13-CV-994 ARR RML, 2013 WL 3968765, at *7 (E.D.N.Y. July 31, 2013). In *Damato*, the court found that TWC's broad arbitration clause was valid and enforceable because, there, "plaintiffs ha[d] not demonstrated that the arbitration clause would ensnare disputes beyond reasonable expectations—the hypothetical TWC truck accident notwithstanding." *Id.* As the *Damato* court correctly noted, "while the temporal limits of the clause may be far-reaching (or even boundless), they are not one-sided, let alone grossly

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

11

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

so.  They apply equally to both sides of Subscriber Agreement: TWC and its customers."  *Id.*

The Arbitration Clause contains neither of Plaintiff's "implicit" limitations; it should be enforced according to its plain language.

## II.    PLAINTIFF'S   CLAIM   FOR   INJUNCTIVE   RELIEF   IS   NOT JUSTICIABLE

As TWC demonstrated in its opening brief, Plaintiff lacks standing to pursue her claim for injunctive relief.  To have standing to obtain such relief, *Plaintiff bears the burden* of showing that she faces "a real and immediate threat of repeated injury."  *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).  "Past exposure to illegal conduct" by itself is not enough.  *Id.* at 495-96.  Tellingly, Plaintiff does not even *try* to make the required showing, because she cannot:  TWC *stopped calling her over a year ago, over eight months prior to filing of the Complaint, and has implemented mechanisms to prevent calling her in the future.*  Green Decl. ¶¶ 6-8. Plaintiff entirely ignores TWC's primary standing argument in favor of attacking TWC's alternative mootness argument, and puts forth *no* evidence to rebut TWC's declaration.  Instead, she relies (at 15) on an "information and belief" allegation from her Complaint (¶ 24), that "TWC continues to call [plaintiff] and the other putative class members" and argues that some websites contain anonymous claims of unwanted calls received from 2008 to 2010.  But "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003);[7]  *see also St. Clair v. City*

---

[7] As TWC argued in its opening brief, Plaintiff's Complaint admits that "[s]tarting in June 2015, Plaintiff began receiving calls from TWC on her wireless telephone. ... Plaintiff received approximately one to three calls per day ***over the course of a***

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
WASHINGTON, D.C.

12

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

*of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (same); *Haddix v. Gen. Mills, Inc*., No. 2:15-CV-02625-MCE-AC, 2016 WL 2901589, at *5 (E.D. Cal. May 17, 2016) ("Plaintiff could not simply rely on contrary assertions in her Opposition brief [or her Complaint] to establish subject matter jurisdiction."). Therefore, Plaintiff has failed to meet her burden to establish standing.

Plaintiff attacks (at 13) TWC's declaration, arguing that "TWC's self-serving assurances are of no value" and that mere "promises to not violate the law in the future … cannot moot a plaintiff's request for injunctive relief." But that is an attack on a strawman. Unlike the cases Plaintiff cites (which, in any event, are about mootness and not standing), TWC has not merely promised to discontinue calling to Plaintiff. Instead, ***TWC actually stopped calling***—well before any litigation was on the horizon. Nor is the *Meyer* case upon which Plaintiff relies to the contrary; in that case, unlike here, both the named class representative and the provisionally certified class were found to have received calls during the "two months ***after*** [Meyer] filed [his] lawsuit." *Meyer v. Portfolio Recovery Associates, LLC*, No. 11CV1008 AJB, 2011 WL 11712610, at *6-7 (S.D. Cal. Sept. 14, 2011) (emphasis added); *see also* Exhibit A to Notice of Removal at 2, *Meyer* (C.D. Cal. May 9, 2011), ECF No. 1 (reflecting filing date). By contrast, TWC stopped calling Plaintiff eight months *before* this suit was filed. Green Decl. ¶¶ 6-8.

Plaintiff also raises the strange argument (at 15-16) that "[b]ecause Plaintiff seeks to enjoin future violations of the TCPA, and because the TCPA specifically allows injunctive relief, TWC's future TCPA violations should be presumed." Of course, that is not the law. *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047-48 (9th Cir. 2014) (holding that the party seeking to establish subject matter jurisdiction has the burden of producing evidence of injury in fact and

---

*month*." Complaint ¶¶ 17, 19 (emphasis added). By Ms. Miller's own account, TWC discontinued calling her, at the latest, in July of 2015, months before this lawsuit was filed. *Id*. Thus, even on the pleadings, dismissal is appropriate.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

13

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

redressability, to establish standing to obtain injunctive relief).   Plaintiff's authority, *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, merely holds that because the plaintiff ***obtained judgment at trial*** that defendant violated a "civil rights statute"—there, the Fair Housing Act—the Ninth Circuit "will presume that the plaintiff has suffered irreparable injury" for purposes of the equitable factors applicable to issuing a ***post-verdict***, forward-looking injunction.  251 F.3d 814, 827 (9th Cir. 2001).  The TCPA is not a "civil rights statute."  And more importantly, *Silver Sage Partners* does not even purport to analyze when a plaintiff has standing to bring a claim for injunctive relief or when such a claim becomes moot, the issues presented here.[8]

Finally, Plaintiff appears to argue (at 14-15) that her claim for injunctive relief is saved because "other putative class members" may be suffering ongoing injuries.  The law is clearly to the contrary.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) ("That a suit may be a class action …. adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong" (quotation marks and citation omitted));  *Slayman*, 765 F.3d at 1048 ("But where, as here, the plaintiff's claim becomes moot before the district court certifies the class, the class

---

[8] Although this line of cases is completely irrelevant for present purposes, TWC notes that it is difficult to see how those cases can be squared with the Supreme Court's subsequent decision in *Winter v. NRDC*, 555 U.S. 7 (2008), which expressly rejected the Ninth Circuit's application of a relaxed irreparable harm standard.  *Id.* at 20-24, 32-33.  Multiple district courts in this Circuit have noted that *Winter* overruled this line of cases.  *See, e.g.*, *Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, No. C 09-5191 CRB, 2010 WL 475361 at *6 (N.D. Cal. Feb. 4, 2010) ("To the extent prior Ninth Circuit case law concluded that irreparable harm need not be shown in certain statutory contexts, that case law is in conflict with *Winter*.");  *Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 963 (N.D. Cal. 2013) (similar).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

14

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

action normally also becomes moot."); *Board of School Comm'rs v. Jacobs*, 420 U.S. 128, 129 (1975) (per curiam); *Kuahulu v. Employers Ins. of Wausau*, 557 F.2d 1334, 1336-37 (9th Cir. 1977).  In any case, Plaintiff does not dispute that she is bound to the class action waiver in the Subscriber Agreement; as a result, her class claims are subject to immediate dismissal, and there is not even a putative class to which she can attempt to bootstrap her claim for injunctive relief.  Motion at 2, 13; Subscriber Agreement § 15(b).[9]

Because, under the unrebutted facts, Ms. Miller cannot establish any credible fear of receiving an additional phone call from TWC, she lacks standing to pursue her claim for injunctive relief.[10]

## CONCLUSION

Plaintiff agreed to permit the arbitrator to resolve any questions concerning the Arbitration Clause's scope.  And given TWC's uncontradicted showing that TWC has not called Plaintiff in over a year, Plaintiff's claim for injunctive relief is not justiciable.  Because this Court lacks jurisdiction to adjudicate all claims in this action, the Court should dismiss this case in its entirety with prejudice, and compel arbitration of the individual damages claim.  *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Hoai Dang v. Samsung Elecs. Co.*, No. 14–CV–00530–LHK, 2015 WL 4735520, at *11 (N.D. Cal. Aug 10, 2015)

---

[9]   In addition, issuance of an injunction would not be proper in this case because Plaintiff has an adequate remedy at law, insofar as she may seek statutory damages under the TCPA.  *See* 47 U.S.C. § 227(b)(3) (providing for the award of statutory damages up to $1,500 for each willful or knowing violation, and $500 or greater for other violations of the statute); *Gubala v. Time Warner Cable Inc.* No. 15-CV-1078-PP, 2016 WL 3390415, at *7 (E.D. Wis. June 17, 2016) ("Because the CCPA provides for money damages for violations of the information destruction provision of the CCPA, therefore, the plaintiff has an adequate remedy at law. That means that he cannot prove one of the two necessary elements for obtaining injunctive relief—even if he did have standing.").

[10]  For similar reasons, as explained in TWC's opening brief, even if Plaintiff had standing when the case was filed, her claim has been rendered moot.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

15

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS

(dismissing putative class claims with prejudice due to presence of enforceable class action waiver); Subscriber Agreement § 15(b) (class action waiver governing the instant suit in its entirety).

Dated:  July 11, 2016                    Respectfully submitted,

By /s/ *Andrew D. Prins*
    Andrew D. Prins

    Peter L. Winik (*pro hac vice*)
    Matthew A. Brill (*pro hac vice*)
    Andrew D. Prins (*pro hac vice*)

    *Attorneys for Defendant*
    *TIME WARNER CABLE INC.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

16

Case Number: 8:16-cv-00329-CAS(ASx)
REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND MOTION TO DISMISS